THOMAS J. ENRICO, PLAINTIFF–APPELLANT, v. CAROLYN
GOLDSMITH (FORMERLY CAROLYN ENRICO),
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted December 19, 1989—Decided January 10, 1990.

Before Judges PRESSLER, LONG and LANDAU.

*Powers & November,* attorneys for appellant (*Michael J. Nidoh* on the brief).

*Oury & Mizdol,* attorneys for respondent (*Dennis J. Oury* on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

This is an appeal by plaintiff Thomas J. Enrico from the denial of a motion to reconsider a post-divorce modification order. Enrico was divorced from defendant Carolyn Goldsmith (formerly Enrico) in 1981. There are two children, Randi, now age 19, and Pamela, now 15.

Enrico challenges the order which requires that he pay two thirds of Randi's college expenses up to $5,200 per year and 100% of those expenses in excess of $5,200, subject to a limited reduction in the amount of his support for Randi when she is attending a college with yearly costs in excess of $5,200. Enrico's 1987 gross income as a high school principal was $57,700. Both he and Goldsmith have remarried. Custody is nominally joint, but Goldsmith has primary custody of the children. She reported a gross income of $23,845 in 1987 from unspecified employment with a theatrical lighting company.

The original property settlement agreement, incorporated in the judgment of divorce, provided that Enrico should be involved in the children's lives, including matters such as education, health and social development. In accordance with the agreement, he paid $180 per week in child support, plus 75% of medical bills unreimbursed after coverage under his basic and major medical coverage. The agreement provided that:

The husband and wife shall consult upon the higher form of education to be attended to by each child. The parties agree that their own financial situation shall be taken into account, and each party agrees, that to the extent of his or her financial ability, to contribute to the cost of same, that they shall do so. The financial ability to pay and to contribute shall be determined at the time the need arises.

The present issue arose when Enrico moved for an order appointing a family counselor to "attempt to enable the parties and ... [Randi] to discuss the child's attendance at college, choice of college and; other relevant details ...," to set forth the respective responsibility of each party for college costs, and to allocate his own support obligation towards Randi's college expenses.

Although Randi's final college choice, and consequently the projected expenses, fluctuated during the course of the proceedings below, it appears clear that her college costs are about $10,000 per year. Enrico originally sought an order directing Randi to apply to a lower cost state college (*See, e.g., Nebel v. Nebel,* 99 *N.J.Super.* 256 (Ch.Div.1968), aff'd 103 *N.J.Super.* 216 (App.Div.1968)), but this issue has not been pursued on appeal. Randi now attends Southern Connecticut University, and the order which the trial judge declined to materially modify provides for Enrico to pay two thirds of Randi's college costs up to $5,200, plus 100% of the excess college cost. The latter condition was partially offset by reducing Randi's weekly support from $90 to $45. There was a modification requiring Randi to apply for scholarship and loan aid.

Enrico submitted financial information which showed a net worth of about $3,000. He complained of Goldsmith's failure to submit information as to her assets which include ownership of a late model Mercedes Benz and half interest in a $400,000 residence and a shore vacation home. Goldsmith argued that the extent of her assets should not be a factor in determining where to place the principal burden of paying for Randi's college costs. She pointed to the fact that even when Enrico's support payments were added to her available income, and deducted from his income, she earned one third less than he.

Accordingly she urged that two thirds of Randi's college expenses should be paid by Enrico, and that neither party should be required to sell assets to finance a child's college costs.

While recognizing that the earnings of Goldsmith's present husband should not be considered when fixing her contribution to child support, Enrico complained that her declared annual expenses included substantial payments on the Mercedes and that her residential mortgage payments were directly attributable to the husband's substantial lifestyle. But for that costly lifestyle, Enrico urged, Goldsmith would have substantial funds available to assist in meeting Randi's college costs, notwithstanding income differential.

On appeal Enrico notes that although Goldsmith had herself requested a two thirds/one third allocation of Randi's education expenses, the result of the present order is to impose an even more disproportionate burden upon him because the $45 weekly support reduction is far less than the impact of paying 100% of all college expenses over $5,200. He argues that the trial judge made no findings of fact in fixing the college expense obligation, that it was error not to consider Goldsmith's substantial net assets when making the allocation, and that, in these circumstances, requiring him to contribute over 40% of his income toward child support was an abuse of discretion. He further contends that a plenary hearing should have been conducted respecting the parties' assets and ability to pay. Enrico further requests that we exercise original jurisdiction to reapportion the respective college support obligation of the parties, preferably on a 50–50 basis. Goldsmith, of course, urges that the trial court correctly determined the parties' respective share of Randi's college expenses.

We believe that the modification order under review constituted a mistaken exercise of discretion by the trial judge, which we have little alternative but to remand, not only because the record affords little basis for ascertaining what his reasons were for the allocation of Randi's education expenses, but

because it is also inadequate for us to exercise original jurisdiction to formulate a proper modification order.

The apparent basis for the order is the fact that, as noted above, Enrico earns more than Goldsmith even after adjustment for the original level of child support payments. We agree with Enrico that opportunity should have been afforded for exploration of the factors mentioned in *Newburgh v. Arrigo*, 88 *N.J.* 529, 545 (1982). Since the holding in *Dietrick v. Dietrick*, 88 *N.J.Eq.* 560 (E. & A.1918), our highest court has made clear that a support award must take account not only of current income but of property and capital assets. More recently, in *Lynn v. Lynn*, 165 *N.J.Super.* 328 (App.Div.1979), certif. den. 81 *N.J.* 52 (1979), we held that under *N.J.S.A.* 2A:34–23, the court should not restrict its approach to consideration of current income alone. We pointed out that, consistent with well-recognized principles of law, both parents have an equal obligation to support their children, except as the circumstances of the particular case cast a greater burden on one or the other. Quoting earlier authority, we also held in *Lynn, supra*, at 343 that the means of the parents to fulfill the obligation of support must be determined, and that this requires an evaluation of the wife's *assets* as part of all the relevant economic circumstances bearing upon the determination. *See also Weitzman v. Weitzman*, 228 *N.J.Super.* 346, 354 (App.Div.1988), certif. den. 114 *N.J.* 505 (1989). Moreover, the most recent amendments to *N.J.S.A.* 2A:34–23 provide that in cases not covered by court rule, "all sources of income and assets of each parent" are to be considered. We take this as legislative endorsement of our judicial interpretation of the statute prior to its amendment.

As part of the overall circumstances, we also believe that it was appropriate for the trial judge to have considered, as requested by Enrico, the available income of each party, not merely by recourse to gross earnings less expenses but with an awareness of the pre-divorce living standard of each party. So,

for example, to the extent that expenses of one party are attributable to maintenance of a standard of living higher than that enjoyed in the previous marriage, it is a factor to be considered in apportioning obligations between the parties. Moreover, it is true that neither the trial judge, nor the record itself, offered any basis for making Enrico bear 100% of expenses over $5,200, as well as two thirds of those below $5,200.

We are concerned because the record discloses that there is another daughter who, we must assume, also aspires to attend college. The age differential is such that both children may well be in college at the same time. The present order, and the record, does little to evaluate or anticipate that possibility, or to formulate an orderly plan in the best interests of both children and the parties. Although the order may appear superficially to deal only with Randi's college needs, we observe that most families in our present society necessarily regard college expenses as something to be budgeted and paid for as part of a long-term scheme involving the judicious use and application of earnings and assets before, during and sometimes after the period of education. Education is, in effect, a capital investment.

The high costs of college present difficult problems for families even when those problems are not exacerbated by the backwash of an acrimonious divorce. It is particularly important, therefore, that a problem of this nature be given a full hearing consistent with the authorities above cited, with articulated reasons for the order ultimately entered. We remand for this purpose as we are satisfied that our interpretation of *N.J.S.A.* 2A:34–3 and the cases cited herein are fully consistent with the parties' own agreement.

We add one final comment because of the suggestion in Goldsmith's brief that, without application for stay, Enrico has ignored the obligations imposed upon him by court order while pressing this appeal. The "clean hands" doctrine is a consideration present in every equitable proceeding. We do not know

the true facts, but we recognize that conduct of the parties is a factor in the sensitive balance required in a case of this nature.

Reversed and remanded for proceedings consistent with the above, which may include, in the discretion of the trial judge, entry of an appropriate interim order respecting college costs.