# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1590-18T4

T.Z.,

     Plaintiff-Appellant,

v.

J.J. and T.Z.,

     Defendants-Respondents.

_____

Submitted September 16, 2019 – Decided October 17, 2019

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FD-07-3683-18.

Lesley Renee Adams, attorney for appellant (Lesley Renee Adams, of counsel; Harriet Elaine Rahgnal, on the brief).

Respondent T.Z. joins in the brief of appellant T.Z.

PER CURIAM

Plaintiff-paternal grandmother T.Z. (Toni)[1] appeals an August 22, 2018 order from the Family Part denying her application for joint legal custody and temporary physical custody of her then six-year-old and three-year-old grandchildren, and a November 16, 2018 order denying her motion for reconsideration. Having considered the arguments presented in light of the record and applicable legal standards, we affirm.

In June 2017, defendant J.J. (Janet), who lives in North Carolina, voluntarily gave temporary custody of her two children to Toni, who lives in Newark, because Janet had difficulty financially supporting and caring for them. At the time, Janet was working 11:00 p.m. to 8:00 a.m. (the midnight shift). It was understood the children would return to Janet once she was able to obtain daytime employment and improve her financial situation.

A year later in June 2018, Toni filed a motion for joint legal custody, residential custody, and visitation of her grandchildren.

At the motion's August 22 return date, Toni and Janet appeared, but defendant T.Z. (Ted), the children's father and Toni's son, did not appear because he was not provided notice of the hearing date. Toni testified that she did not

---

[1]  We use initials and pseudonyms to protect the privacy of the parties and for ease of reference.

A-1590-18T4

want to keep the children permanently, but would return them to Janet once Janet could save some money and get a daytime job so that she would have enough time to care for her children. Toni said her son had no involvement with his children.[2]

Janet testified she had no relationship with Ted, and leased a three-bedroom apartment so the children would have their own bedrooms. She disclosed she was still trying to change from the midnight shift to the daytime shift. Until that occurred, her plan was to work while the children slept, and while she slept her daughter would be in school and her son would be in daycare.[3] Janet provided the trial judge a copy of her lease agreement and documentation evidencing the children's respective enrollments.

The judge denied Toni's application in an order issued that same day. In a terse oral decision, the judge stated:

> [Janet's] doing the best she can. I don't see anything[,] and you're not telling me anything that she's doing out and out harm to the children. It's not like she's leaving them home alone. She has secured daycare. She has a plan in place that even while she's asleep, she's

---

[2] The record indicates that Ted has been ordered to pay child support in North Carolina.

[3] It is unclear from the record, but apparently Janet's boyfriend would watch the children while they were sleeping and Janet was at work.

A-1590-18T4

working, doing the best she can to put a roof over their head[s] and make sure that they have food to eat.

. . . .

I have no reason to take her kids away from her. As much as you might think that you can do a better job, we've got to let her live her life and do it.

With the representation of counsel, Toni sought reconsideration claiming the children should be returned to her custody because the judge failed to make a determination that it was in the children's best interest to return to their mother. She also sought a plenary hearing.

At the October 12 oral argument, Toni's counsel and all parties attended – Janet doing so telephonically. Janet testified she was able to secure daytime employment, and, thereby, resolve all of Toni's concerns about the children's welfare. Ted voiced his support for the children returning to his mother. The judge reserved decision.

On November 16, the judge issued an order denying reconsideration and requiring "that any new motions for custody and visitation shall be filed in North Carolina." In her oral decision of the same date, the judge, citing V.C. v. M.J.B., 163 N.J. 200, 218 (2000), Watkins v. Nelson,163 N.J. 235, 2 (2000), and K.A.F. v. D.L.M. 437 N.J. Super 123, 134 (App. Div. 2014), applied the two-step

analysis used when a third party seeks custody of a child over a natural parent. The judge did not do so when she initially denied Toni's application.

The judge pointed out that the arrangement between Janet and Toni gave Toni temporary custody of the children until Janet "got on her feet." Based upon the undisputed testimony and evidence presented, the judge determined Janet was fit to parent her children because she was working the day shift, had adequate living accommodations, and secured school and daycare arrangements for them. The judge determined Toni presented no evidence that Janet was "unfit or that there was abandonment or gross misconduct[,] . . . or that the children are unsafe, . . . are in danger, . . . had been abused or . . . neglected."

In noting Ted's "testimony [concerning Janet's fitness as a parent] was primarily focused on [her] past history[,]" and observing his "appearance, body language, facial expressions and physical gestures, along with his language, speech, tone of voice and intonation[,]" the judge found him not credible.

The judge also acknowledged an unsigned, undated, and unnotarized typed letter, purportedly written by Ted, which the judge did not see until after her order of the same day was issued. The judge determined the letter was not "competent evidence or of significant probative value."

A-1590-18T4

Because Toni did not satisfy step one of the two-step analysis used when a third party seeks custody of a child over a natural parent, the judge reasoned a plenary hearing was not necessary.

The judge further found North Carolina was the proper forum for future litigation, including Toni's pending visitation request, as New Jersey was no longer a convenient forum under N.J.S.A. 2A:34-7.1. Among the factors cited by the judge were the children's current residence, schooling and daycare in North Carolina; their limited fourteen-month residency in New Jersey; both parents reside in North Carolina, and given their limited financial resources it would be a burden for them to continue litigation in New Jersey; Toni frequently travels to North Carolina and she is in a better financial position to be there for court appearances; and child support has been established by a North Carolina court.

Before us, Toni contends the trial judge erred by not considering the second-step–exceptional circumstances–of the two-step analysis. She also maintains a plenary hearing should have been conducted, wherein she would have been able to present an expert to substantiate that she is the children's psychological parent. We disagree and affirm substantially for the reasons

articulated by the trial judge in her oral decision denying reconsideration. We add the following brief comments.

On issues of custody, the best interests of the child is the court's primary consideration in custody cases. Kinsella v. Kinsella, 150 N.J. 276, 317 (1997). However, where a third party seeks custody, a two-step analysis is conducted. In K.A.F., we pronounced:

> The first step requires the court to determine whether the presumption in favor of the legal parent is overcome by either a showing of "unfitness" or "exceptional circumstances." Watkins . . . 163 N.J. at 247, 254. In Watkins, the Court emphasized that one of those grounds must be proven before the trial court proceeds to the second step of the analysis. Id. at 237 ("That presumption can be rebutted by proof of gross misconduct, abandonment, unfitness, or the existence of 'exceptional circumstances,' but never by a simple application of the best interests test."). It is only after that presumption has been rebutted that the court proceeds to the determination whether awarding custody or other relief to the third party would promote the best interests of the child. Id. at 254; [P.B. v. T.H., 370 N.J. Super. 586, 594, (App. Div. 2004)] . . . .
>
> [437 N.J. Super. at 134. (emphasis supplied.)]

We discern no error in the judge's application of this standard. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (holding appellate courts owe no special deference to the trial judge's "interpretation of the law and the legal consequences that flow from established

facts . . . ."). The judge's factual findings regarding Janet's fitness as a parent are supported by credible evidence in the record. See Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). There was no evidence presented that necessitated consideration of any "exceptional circumstances." The judge did not abuse her discretion in any evidentiary rulings. See Townsend v. Pierre, 221 N.J. 36, 52-53 (2015). A plenary hearing was not required because there was no genuine and substantial factual dispute regarding the fitness of Janet to parent her children. See K.A.F., 437 N.J. Super. at 137-38.

Furthermore, we cannot conclude the judge, who actually heard the testimony of the parties and considered documentary evidence, erred in denying any modification, and she certainly did not abuse her discretion by refusing to reconsider the decision in light of the lack of any additional evidence offered by defendant. See Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010). Toni failed to show that the judge "expressed [her] decision based upon a palpably incorrect or irrational basis." Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). In fact, as we have noted above, in denying reconsideration, the judge articulated her factual findings and applied the proper legal standard to substantiate her orders.

To the extent we have not addressed any of Toni's remaining arguments, it is because we find them without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1590-18T4